**UNITED STATES, Appellee,**

v.

**Sarveswara R. CHERUKURI, Lieutenant Colonel, U.S. Army, Appellant.**

No. 99–0511.
Crim.App. No. 9601824.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1999.

Decided May 26, 2000.

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., and EVERETT, S.J., joined. CRAWFORD, C.J., filed a dissenting opinion.

For Appellant: *Captain Steven P. Haight* (argued); *Colonel Adele H. Odegard, Major Scott R. Morris,* and *Major Jonathan F. Potter* (on brief); *Colonel John T. Phelps II, Major Leslie A. Nepper,* and *Captain Paul J. Perrone, Jr.*

For Appellee: *Captain Arthur L. Rabin* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham* (on brief); *Captain Arthur J. Coulter.*

Judge SULLIVAN delivered the opinion of the Court.

During the fall of 1996, appellant was tried by a general court-martial composed of officer members at Wuerzburg, Germany. Contrary to his pleas, he was found guilty of four specifications of service disorders or discredits by indecently assaulting four different women in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. In addition, contrary to his pleas, he was found guilty of a single specification of conduct unbecoming an officer by abusing his position as a medical doctor to indecently assault the same four women, in violation of Article 133, UCMJ, 10 USC § 933. On October 23, 1996, he was sentenced to dismissal, 2 years' confinement, and total forfeitures. On February

21, 1997, the convening authority approved the sentence in this case. On December 25, 1998, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court, on August 16, 1999, granted review on the following issue of law:

> WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW BY NOT FINDING THE ARTICLE 134 OFFENSES (ALL INDECENT ASSAULTS) MULTIPLICIOUS WITH THE SPECIFICATION OF CHARGE II ALLEGING CONDUCT UNBECOMING AN OFFICER AND GENTLEMAN.

We hold that the military judge erred in treating these offenses as separate for purposes of findings and sentence, and that a remand is required to the Court of Criminal Appeals. *See United States v. Harwood,* 46 MJ 26, 28–29 (1997).

The Court of Criminal Appeals specifically delineated the evidence in this case concerning the offenses noted above. It said, *inter alia:*

> Concerning the specifics of the allegations, the evidence showed that between 21 and 29 May 1996, appellant examined four women, all dependents of enlisted military members. The medical complaints of these women involved a sore throat, a urinary tract infection, headaches, and stomach distress. Appellant never used a chaperone and always closed and locked the door to the examining room after the women entered. In two cases, he was reported to have "pressed" his body against the patient's in ways that made them feel uncomfortable.
>
> In each case, appellant requested that the women perform acts, which while purporting to further his medical examination, also facilitated access to the women for the purpose of touching or foundling their breasts. Specifically, two patients were asked to lift up their outer garments so that their brassier[e] clad breasts became exposed. Another patient was asked to unfasten her brassier[e] after appellant had lifted her shirt and stared at her breasts "for what appeared to be a pretty long time."
>
> Appellant also induced two of the women to lay down on the examining table, ostensibly for examinations relating to their specific complaints. In the case of Mrs. JLP, he then pinned her hand between his groin area and the table as he examined her. When she attempted to terminate this contact, appellant placed her hand back on his erect penis.
>
> In the case of Mrs. DKR, she complied with appellant's request that she lift her windbreaker above her bosom while remaining prone on the table. Thereafter, "he leaned over and grabbed the front of [her] sports bra ... and pulled it up," and subsequently commented on her "nice tan."
>
> Ultimately, each patient "examination" led to appellant's placing of his stethoscope on the patient's breast(s) and then touching or manipulating the breast with the same hand. In the case of Mrs. DKR, he did this twice. While his use of a stethoscope was consistent with checking for heart and lung functions, the necessity of these "checks" was not obvious and was never explained to the patients.

Unpub. op. at 3.

Contrary to his pleas, appellant was found guilty of the following Charges and specifications:

Charge I: Violation of the UCMJ, Article 134.

> Specification 2: In that [Lieutenant Colonel] Sarveswara R. Cherukuri, U.S. Army, did, at or near Rose Barracks, Vilseck, Germany, on or about 22 May 1996, *commit an indecent assault upon Mrs. [JLP]* a person not his wife by offensively touching her breast and placing her hand on his genitalia, with intent to gratify his sexual desires.
>
> Specification 3: In that [Lieutenant Colonel] Sarveswara R. Cherukuri, U.S. Army, did, at or near Rose Barracks, Vilseck, Germany, on or about 23 May 1996, *commit an indecent assault upon Mrs. [GAP],* a person not his wife by offensively touch-

ing her breasts, with intent to gratify his sexual desires.

Specification 4: In that [Lieutenant Colonel] Sarveswara R. Cherukuri, U.S. Army, did, at or near Rose Barracks, Vilseck, Germany, on or about 23 May 1996, *commit an indecent assault upon Mrs. [DKR]*, a person not his wife by offensively grabbing her breasts, with intent to gratify his sexual desires.

Specification 6: In that [Lieutenant Colonel] Sarveswara R. Cherukuri, U.S. Army, did, at or near Rose Barracks, Vilseck, Germany, on or about 29 May 1996, *commit an indecent assault upon Ms. [RMM]*, a person not his wife by offensively touching her breasts, with intent to gratify his sexual desires.

Charge II: Violation of UCMJ, Article 133.

Specification: In that [Lieutenant Colonel] Sarveswara R. Cherukuri, U.S. Army, did, at or near Rose Barracks, Vilseck, Germany, between on or about 21 May 1996 and on or about 29 May 1996, *take advantage of the trust placed in him as a medical doctor to indecently assault Mrs. [JLP], Mrs. [GAP], Mrs. [DKR], and Ms. [RMM]*, to the disgrace of the armed forces.

(Emphasis added.)

After the findings of guilty were announced, defense counsel disagreed with the Government's assessment of the maximum authorized punishment for these convictions. The record reflects the following:

MJ: Very well. Counsel, what do you calculate as the maximum sentence based upon the Findings of the Court?

TC: Your Honor, the Government calculates the maximum to be: A dismissal, *25 years confinement,* and total forfeitures.

MJ: Very Well. Defense, do you concur?

DC: No, sir. It would be the defense's position that everything is okay, except for, we believe the proper sentence limitation would be *5 years confinement.*

And the reason for that would be, that on the way that the charges were instructed to the panel, *it was clear that indecent assault was a lesser-included offense of conduct unbecoming; because the elements of indecent assault as instructed, were required to be found in order for a finding of guilty to conduct unbecoming, in addition to the additional elements. So, it would be our position that all of the indecent assaults are subsumed into the conduct unbecoming, because all the elements are found there. And therefore, under the elements analysis, it would become lesser-included offenses for sentencing, and therefore multiplicious.*

(Emphasis added.)

The military judge disagreed with defense counsel and held that separate convictions could be upheld because "the gravamen" of the Article 133 offense was different from the gravamen of the Article 134 offenses. He said:

MJ: All right. I think I understand your argument; however, the gravamen of the conduct unbecoming an officer offense appears to be, that over a period of time, the accused took advantage of the trust given him as a medical doctor, to enable him to indecently assault the four individuals. Whereas, the gravamen, if you will, of the indecent assault[s], were the actual wrongful touchings. I do see there to be separate elements, and more importantly, a separate gravamen of this offense, separately distinct from that of the indecent assaults.

Furthermore, I don't find it to be an unreasonable multiplication of charges against this accused. In fact, it would seem that the Government might well have charged, individually, five separate counts of conduct unbecoming an officer, by virtue of the fact that each of these instances at issue, the accused, apparently based on the Findings of the Court, did take advantage of the trust placed in him as a medical doctor. It's that taking advantage of the trust that is the operative words in the 133 charge, and I think it is the operative facts that give rise to the conduct unbecoming charge.

He then denied the defense motion. The Court of Criminal Appeals, relying on its prior panel decision in *United States v.*

*Brown,* No. 9601505 (Army Ct.Crim.App. Apr. 28, 1998), affirmed the trial judge's decision.

— — —

Government appellate counsel suggest that two questions are presented on this appeal. First, whether separate convictions can be legally sustained under Article 133 and Article 134, where the underlying conduct for both convictions is the same.[1] Second, whether the conduct underlying appellant's convictions for service disorders or discredits under Article 134 is the same as that underlying his conviction for conduct unbecoming an officer under Article 133.[2]

■ Turning to the first question noted above, we answered it most recently in *Harwood.* A majority of this Court said, "As a matter of law, it is well-established that, when the underlying conduct is the same, a service discredit or disorder under Article 134 is a lesser-included offense of conduct unbecoming an officer under Article 133." 46 MJ at 28; *see United States v. Rodriquez,* 18 MJ 363, 369 n. 4 (CMA 1984), citing W. Winthrop *Military Law and Precedents* 383–85, 719 (2d ed. 1920 Reprint); *see generally United States v. Boyett,* 42 MJ 150, 152 (1995). Our case law has been consistent in this regard. *See United States v. Waits,* 32 MJ 274 (CMA 1991); *United States v. Court,* 24 MJ 11, 13 (CMA 1987); *United States v. Scott,* 21 MJ 345, 347 (CMA 1986); *United States v. Timberlake,* 18 MJ 371 (CMA 1984); *see also United States v. Naseeruddin,* 49 MJ 156, 157 (1998) (summary disposition). Moreover, dismissal of the lesser-included offense is required by the Supreme Court's recent cases on the Double Jeopardy Clause of the United States Constitution. *See Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Ball v.*

*United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

Our holding in *Harwood* concerning the relationship between Article 133 and 134 criminal óffenses is consistent with the application of the elements test of *United States v. Teters,* 37 MJ 370 (CMA 1993). *See United States v. Lankford,* 196 F.3d 563, 577–78 (5th Cir.1999) (statutory elements test). Article 134 requires that a military accused:

(1) [D]id or failed to do certain acts [*i.e.,* an indecent assault]; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of nature to bring discredit upon the armed forces.

Para. 60b, Part IV, Manual for Courts–Martial, United States (1995 ed.).[3] Article 133 requires that a military accused:

(1) [D]id or omitted to do certain acts [*i.e.,* an indecent assault]; and

(2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

Para. 59b, Part IV, Manual, *supra.* We have repeatedly held that conduct unbecoming an officer rationally entails a higher level of dishonor or discredit than simple prejudice to good order and discipline. *See United States v. Rodriquez, supra; see generally United States v. Foster,* 40 MJ 140 (CMA 1994); *United States v. Schoolfield,* 40 MJ 132 (CMA 1994). Accordingly, where the underlying acts of each charge are the same, only one offense, conduct unbecoming an officer, has a different element than the other. *Ball v. United States, supra; see generally United States v. Chacko,* 169 F.3d 140, 146 (2nd Cir.1999) (if there is *an element in each offense* that is not contained in the other, they are not the same for purposes of double jeopardy).

---

1. *See United States v. Brown,* No. 9601505 (Army Ct.Crim.App. Apr. 28, 1998) (two convictions allowed); *United States v. Cherukuri,* No. 9601824 (Army Ct.Crim.App. Dec. 28, 1998) (separate convictions can be sustained); *contra United States v. Frelix–Vann,* No. 9701014, slip op. at n.1 (Army Ct.Crim.App. Apr. 9, 1999); *United States v. Barber,* No. 9601820 (Army Ct.Crim.

App. Mar. 30, 1998) (only one conviction allowed).

2. *See Cherukuri* and *Brown,* both *supra* at n. 1.

3. All Manual provisions are cited to the version in effect at the time of trial. The 1998 version is unchanged unless otherwise indicated.

The Government, nonetheless, implies that *Harwood* is wrongly decided and argues that "Congress intended that an accused could be properly convicted of both indecent assault and conduct unbecoming an officer based upon the provisions in the Manual for Courts–Martial, paragraph 59c." Answer to Final Brief at 9. It asserts "[t]here is no clear expression in the UCMJ of Congress's intent to treat these offenses as being the same (multiplicious), as one being the lesser-included of the other, or as separate. However, non-binding persuasive authority in the Manual for Courts–Martial instructs that they should be treated as separate offenses. *See* MCM, part IV, para. 59c." *Id.* at 18. In the absence of Congress's invalidation of these Manual provisions, the Government argues that it should be presumed Congress shared this intent for separate convictions. We disagree.

Paragraph 59c of the Manual does not say that an accused may be found guilty of both Article 133 and Article 134 offenses for the same conduct. *See Rodriquez,* 18 MJ at 367. Instead, it states in pertinent part:

> This article includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman. *Thus, a commissioned officer who steals property violates both this article and Article 121.* Whenever the offense charged is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman.

(Emphasis added.) To say one has violated two provisions of law and can be prosecuted for both violations, is not to say that one may be convicted and punished for both these offenses. *See Ball v. United States, supra* at 861, 105 S.Ct. 1668.[4]

Moreover, another provision of this same Manual authorizes dismissal of a specification which states the same offense as another specification. RCM 907(b)(3) states:

> (3) *Permissible grounds.* A specification may be dismissed upon timely motion by the accused if:
>
> (A) The specification is so defective that it substantially misled the accused, and the military judge finds that, in the interest of justice, trial should proceed on remaining charges and specifications without undue delay; or
>
> (B) The specification is multiplicious with another specification, is unnecessary to enable the prosecution to meet the exigencies of proof through trial, review, and appellate action, and should be dismissed in the interest of justice.

### Discussion

> A specification is multiplicious with another if it alleges the same offense, or an offense necessarily included in the other. A specification may also be multiplicious with another if they describe substantially the same misconduct in two different ways. For example, assault and disorderly conduct may be multiplicious if the disorderly conduct consists solely of the assault. *See also* RCM 1003(c)(1)(C).
>
> Ordinarily, a specification should not be dismissed for multiplicity before trial unless it clearly alleges the same offense, or one necessarily included therein, as is alleged in another specification. It may be appropriate to dismiss the less serious of any multiplicious specifications after findings have been reached. Due consideration must be given, however, to possible post-trial or appellate action with regard to the remaining specification.

These provisions, construed together, convey no clear intent on the part of the President (or by implication Congress) to maintain sep-

---

**4.** The dissent mischaracterizes our opinion by asserting: "The majority states that paragraph 59c of the Manual does not say that an accused can violate both Article 133 and Article 134 for the same conduct." What we state is: "Paragraph 59c of the Manual does not say that an accused *may be found guilty* of both Article 133 and Article 134 offenses for the same conduct." (Emphasis added.) This same problem of dual convictions raised the double jeopardy concerns in *Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

arate convictions under Article 133 and Article 134 for the same underlying conduct. *See Rutledge, supra* at 303, 116 S.Ct. 1241.

Admittedly, prior to 1984, the rules in the Manual for Courts–Martial pertaining to separate convictions were different. Paragraph 74b(4) of the 1951 Manual for Court–Martial, United States, said:

(4) *Offenses arising out of the same transaction.* The accused may be found guilty of two or more offenses arising out of the same act or transaction, *without regard to whether the offenses are separate.* In this connection, however, *see* 76(a)(8).

(Emphasis added.) Paragraph 76(a)(8) in turn provided:

(8) The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. Thus, if the accused is convicted of escape from confinement (Art. 95) and desertion (Art. 85)—both offenses arising out of the same act or transaction—the court may legally adjudge the maximum punishment authorized for each offense because an intent to remain permanently absent is not a necessary element of the offense of escape, and a freeing from restraint is not a necessary element of the offense of desertion. *An accused may not be punished for both a principal offense and for an offense included therein because it would not be necessary in proving the included offense to prove any element not required to prove the principal offense.*

(Emphasis added.)

The language in paragraphs 74b(4) and 76a(5) of the 1969 Manual is substantially the same. In other words, these Manual provisions permitted separate convictions for offenses which were not separate, but an accused could not be sentenced separately for these offenses.

These Manual rules were changed in 1984. The separate conviction provision of the pre-

vious Manuals was moved to the Discussion section of RCM 918(a) and modified in scope. This Discussion section now states:

Offenses arising from the same act or transaction. The accused may be found guilty of two or more offenses arising from the same act or transaction, whether or not the offenses are separately punishable. **But see RCM 906(b)(12); 907(b)(3)(B); 1003(c)(1)(C).**

(Emphasis added.)

RCM 907(b)(3)(B), as noted above, provides for the dismissal of multiplicious specifications. Moreover, RCM 921(c)(5) makes clear that a lesser-included offense should not even be voted on if an accused is found guilty of the greater offense. *See* RCM 307(c)(4), Discussion ("In no case should both an offense and a lesser included offense thereof be separately charged."). Finally, the military cases cited by the Army Court of Criminal Appeals in *United States v. Brown, supra,* as recognizing the practice of dual convictions under Articles 133 and 134 for the same conduct were based on the now rescinded Manual rules and predate the Supreme Court decisions in *Ball* and *Rutledge.* Accordingly, the Government's implied-intent-of-Congress argument must fail. *See Rutledge, supra* at 303–04, 116 S.Ct. 1241.

■ Our second inquiry is whether appellant's four convictions under Article 134 are based on the same "underlying conduct" as that supporting his conviction under Article 133. *See Harwood, supra* at 28. This was not the situation in *Brown,* the case relied on most heavily by the Court of Criminal Appeals to distinguish our decision in *Harwood.* There, additional facts and misconduct supported the appellant's conviction under Article 133, which were not part of his conviction under Articles 134 and 93. In appellant's case, however, proof of additional acts amounting to "indecent assaults" on different dates simply does not exist on the record before us.

The appellate court below nevertheless approved the military judge's so-called "gravamen of the offense" test to determine the underlying conduct contained in these speci-

fications was not the same. It concluded that abuse of the officer's professional position as a medical doctor was the gravamen of the Article 133 offense, and it was not the same as the indecent assaults, which were the gravamen of the Article 134 offense. Again we disagree.

*Harwood* considered the propriety of convicting a military accused of both a greater and a lesser-included offense based on "the same underlying conduct." 46 MJ at 28; *see generally Ball*, 470 U.S. at 857, 105 S.Ct. 1668 ("same conduct"); *Rutledge*, 517 U.S. at 297, 116 S.Ct. 1241, citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("same act or transaction"). It did not adopt a gravamen of the offense approach.[5] In fact, in *Harwood*, although fraternization and maintaining a close personal relationship were the gravamen of the charged offenses, we focused on the particular acts alleged in both specifications, *i.e.*, hugging, kissing, and engaging in sexual intercourse. 46 MJ at 27–28. Here, the particular acts alleged in each specification were the indecent assaults.

In conclusion, we note that the military judge considered appellant's conviction under Article 133 as separate from his convictions for service disorders or discredits under Article 134. Thus, he incorrectly instructed the members of the maximum authorized punishment by at least 5 years. *See generally United States v. Mincey*, 42 MJ 376, 378 (1995). On the other hand, the prosecution was not required to consolidate appellant's individual indecent assaults into a single specification under Article 133 and could maintain separate convictions for each assault under Article 134. *Id.* A remand to the Court of Criminal Appeals is appropriate, where the Government can elect to retain the four convictions of the lesser-included offense under Article 134 or the single consolidated conviction of the greater offense under Article 133. After such an election, the lower appellate court can determine whether a rehearing on sentence is necessary.

The decision of the United States Army Court of Criminal Appeals is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to that Court for action consistent with this opinion.

CRAWFORD, Chief Judge (dissenting):

The majority reaches an absurd conclusion in trying to support its decision in *United States v. Harwood*, 46 MJ 26 (1997). The majority states that paragraph 59c of the Manual does not say that an accused can violate both Article 133 and Article 134 for the same conduct. They cite specifically to a provision of paragraph 59c which provides, by way of example: "Thus, a commissioned officer who steals property violates both this article and Article 121." The clear import of this language, to me at·least, is that an accused can be charged with both an Article 133 offense and a substantive offense like Article 121. In fact, appellant could have been charged with violating Article 128 by indecently assaulting his victims, but he was instead charged with indecently assaulting them under Article 134. Either choice is equally acceptable under the provisions of the Manual for Courts–Martial, yet the majority would have us believe that appellant could violate both Articles 128 and Article 133 for assaulting his victims, but could not violate both Articles 134 and 133 for assaulting his victims.

Moreover, paragraph 59c states: "This article includes acts made *punishable* by any other article." (Emphasis added). By its plain language, paragraph 59c does not apply solely to findings but provides that Article 133 is also separate for sentencing. The Government does not even gain an increase in sentence by charging the indecent assault under Article 134 rather than under Article 128, under either provision the maximum sentence is the same.

That is why I must agree with the trial judge who, in commenting on the defense multiplicity motion, stated:

5. On a personal note, I observe that my dissenting colleague again echoes her lone dissent in *Harwood*. She is consistent, but so is the majori-

ty in following the law and the binding precedent of this Court in *United States v. Harwood*, 46 MJ 26 (1997).

[T]he gravamen of the conduct unbecoming an officer offense appears to be, that over a period of time, the accused took advantage of trust given him as a medical doctor, to enable him to indecently assault the four individuals. Whereas, the gravamen, if you will, of the indecent assault[s], were the actual wrongful touchings. I do see there to be separate elements, and more importantly, a separate gravamen of this offense, separately distinct from that of the indecent assaults.

Thus, as I said in my dissent in *Harwood,* 46 MJ at 30, and for almost precisely the same reasons, "[A]pplying a 'statutory' ele-ments approach or a pleading-elements approach, these offenses are not multiplicious." *See also United States v. Neblock,* 45 MJ 191, 202 (1996) (Crawford, J., concurring in the result).

If we are going to continue down this path, let us clearly tell the field that charging offenses under both Article 133 and under the substantive articles will have a very different result than charging the very same conduct under the provisions of Articles 133 and 134. While the Manual for Courts–Martial does not appear to favor one method over another, it is clear that the majority does.